Larry WARE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16017.

United States Court of Appeals
Eighth Circuit.

Oct. 14, 1958.

Julius L. Sherwin, Chicago, Ill. (Theodore R. Sherwin, Chicago, Ill., on the brief), for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Larry Ware, defendant-appellant herein, was convicted by a jury on all five counts of an indictment charging narcotic violations. The five counts arose out of two transactions. Count 1 charged the purchase of heroin on or about August 21, 1954. Count 2 charged the sale of the same quantity of heroin on or about August 21, 1954, and Count 3 charged possession of the same drug on that date. Count 4 charged the sale of a quantity of heroin on or about May 5, 1955, and Count 5 charged the possession of the same quantity on the same date. Count 1 charged violation of 26 U.S.C.A. § 4704(a); Counts 2 and 4 of 26 U.S.C.A. § 4705(a); and Counts 3 and 5 of 21 U.S.C.A. § 174.

The evidence indicated as to the first three counts that on August 21, 1954, Earl Williams, a special employee of the Narcotics Bureau, was searched by narcotics agents to determine his personal possessions, particularly as to money and narcotics. He was then given $125 in government money. Thereafter, under surveillance of government agents, he went to a certain place in the City of St. Louis, Missouri, where he waited for approximately an hour. At the end of that time the appellant drove up in an automobile, together with other passengers. He stopped the car in front of Williams and handed Williams a brown bag and received the $125 in return. Williams then got in a taxicab which was closely followed by the government agents, one of whom, Fred. T. Dick, had been an eyewitness to the transaction and who was able to identify the appellant. The contents of the package obtained by Williams from the appellant were analyzed by a government chemist and determined to be heroin.

Evidence with respect to Counts 4 and 5 indicated that William H. Newkirk, a Federal Narcotics Agent, went to a residence in the City of St. Louis on May 5, 1955. There he saw John Butler and his wife, a man named Ben Hemphill, and the appellant, whom Newkirk had known since October of the preceding year. A conversation with reference to the purchase of narcotics ensued. Newkirk paid Butler $250 of government money and received from him a package. In the conversation dealing with the purchase of narcotics, Newkirk asked the appellant about the quality of the "stuff" he was getting from Butler and the appellant replied that " * * * he would guarantee the quality, that it was a very high quality, and that he would guarantee, *that he had brought the heroin to St. Louis from Chicago himself*, and *that it was his heroin*, and that he would guarantee the heroin as being of good quality and of good quantity." (Emphasis supplied.) A chemical analysis by William H. Schaller, government chemist, identified the contents of the package purchased by Newkirk as heroin. After the chemical analysis the heroin was destroyed.

At the close of the oral testimony, the government offered its various Exhibits 1, 1A, 3, 4 and 4A, which included the heroin and containers purchased from Ware on August 21, 1954, and the analytical record cards of both quantities of heroin. Objection was made thereto. The jury was excused until the following day and discussion was had with reference to the admissibility of the government's exhibits. The following morning there was further discussion regarding the exhibits but the record is completely silent as to the court's ruling. The court directed the trial to proceed. The appellant testified in his own behalf to the effect that he did not make and had nothing to do with either sale of heroin as charged in the indictment. A jury verdict of guilty was returned as to all

five counts. Appellant received an aggregate sentence of ten years.

■ Appellant's first claim of error is in the refusal of the trial court to direct a verdict of acquittal at the close of the government's case and again at the close of all of the evidence. In this court, and for the first time, the appellant claims that Government's Exhibits 1, 1A, 3, 4 and 4A were not admitted into evidence. Absence of anything in the record to indicate that the court did not receive the questioned exhibits was not called to the attention of the trial court in the motions to direct a verdict of acquittal at the close of the government's case and again at the close of all the evidence. In the appellant's motion for judgment of acquittal or in the alternative for a new trial, made some considerable time after the trial of the case and the conviction of the appellant, it was claimed, "9. The Court erred in admitting testimony of government chemist William H. Schaller, concerning the chemical content of certain white powder or substance allegedly analyzed by said witness, *in the face of the fact that the white powder had been destroyed and was not itself offered into evidence,* said testimony being grossly improper, incompetent and highly prejudicial." (Emphasis supplied.) Yet at that time it was not claimed that narcotic Exhibit 1A (the heroin purchased August 21, 1954) was not admitted into evidence. Each of the questioned exhibits had been properly identified and sufficient foundation for their admission into evidence had been established and thereafter the government had offered all of the exhibits themselves. It seems clear to us that everyone connected with the trial at the time considered that the exhibits had been received. In the appellant's motion after trial he also set forth as error, "8. The Court *erred in admitting into evidence Government's Exhibit 4A,* a certain return receipt from the post office, \* \* \*" (emphasis supplied) indicating, we think, very clearly that the appellant and his counsel believed that the Exhibits 1, 1A, 3, 4 and 4A, all of which had been offered by the government at the same time, had been received. The lower court treated them as having been received and we do likewise.

■■ Even if the reverse were true and the exhibits had not been received by the court, the government nevertheless made a case sufficient for conviction. Physical presence of the heroin as an exhibit received in evidence was not essential to establish that the crime charged had been committed. If the jury believed, as they had a right to believe, that the appellant sold a quantity of white powder in two instances to the government agents and that a chemical analysis of the powder in each instance established that it was heroin, then the physical presence of the heroin in court as an exhibit was not necessary. If the jury wished to believe the government witnesses, including the chemist, then the appellant may not avail himself of the absence of the heroin any more than the physical absence of a dead body as an exhibit in a murder trial is fatal to conviction. Here the crime itself was established by the witnesses who saw and took part in the occurrences. Their testimony alone is sufficient. The entire question is one of credibility and that is for the jury. See United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, 932; United States v. Adelman, 2 Cir., 1939, 107 F.2d 497, 498–499; and United States v. Singer, D.C.N.Y.1942, 43 F.Supp. 863, 864, wherein the court stated:

"Further, the mere fact that the sample was lost or destroyed, after analysis, does not prevent proof of such analysis, evidence having been offered to identify the sample analyzed, with the article seized, and the loss or destruction of the sample goes solely to the weight of the evidence, which is for the Jury to pass upon."

■ Appellant's second claimed error is based upon a failure of the trial court to declare a mistrial because of what appellant alleges to be "the Introduction of Improper, Inflammatory, and Prejudi-

cial Evidence Concerning a Transaction Between a Government Agent and Another, Not a Defendant in This Case." Appellant insists that the sale of heroin on May 5, 1955, was by John Butler to Agent Newkirk and that evidence of such transaction in his, the appellant's, trial was highly improper and prejudicial. Of course, the argument completely overlooks and gives no consideration to the fact that the appellant took part in the conversation dealing with the heroin purchase and that while Butler physically handed the heroin to the agent and received the $250 in return, the appellant himself guaranteed the quality and quantity and stated that *he had brought the heroin to St. Louis from Chicago and that it was his heroin.* From this testimony, the jury could find, as it evidently did, that the appellant was in on the sale and possession. Cases cited by the appellant are not in point.

For his third error the appellant claims that "Where the Government's Case Depends Solely Upon the Grossly Improbable and Uncorroborated Testimony of a Paid Government Informer Who Is a Self-Confessed Narcotic Addict, Dope Peddler and Recidivist, and Discloses a Clear Case of Entrapment, Then the Court Should Direct a Verdict of Acquittal as a Matter of Law and the Failure So to Do Is Error."

This alleged error is aimed at Counts 1, 2 and 3. True enough, witness Williams was a government informer with a history of criminal narcotic violations. His testimony, however, was not uncorroborated. Treasury Agent Fred T. Dick amply supported the testimony of the informer. The credibility of the witnesses was for the jury and not for the court.

■■ As to the belated claim of entrapment, no mention thereof was made at the time of trial and we may not consider it here. Cofer v. United States, 8 Cir., 1958, 256 F.2d 221, 223:

"The function of this Court is to review only rulings made by a trial court on questions brought to its attention and passed upon by it. Ayers v. United States, 8 Cir., 58 F. 2d 607, 608."

See also United States v. Kaiser, 7 Cir., 1943, 138 F.2d 219, 220, certiorari denied January 3, 1944, 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 483. In addition thereto, the appellant himself took the stand in his own behalf and denied making the sales in question. He is in no position now to claim that he was entrapped into making the sales which he denies making.

Finding no error, the judgment appealed from is affirmed.