**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Cromwell BAILEY, Defendant-**
**Appellant.**

**No. 12810.**

United States Court of Appeals
Seventh Circuit.

April 13, 1960.

Glenn C. Fowlkes, Edward R. Gayles, Chicago, Ill., for appellant.

Charles R. Le Master, Asst. U. S. Atty., Kenneth C. Raub, U. S. Atty., Fort Wayne, Ind., Martin H. Kinney, George Vann, Asst. U. S. Attys., Hammond, Ind., for appellee.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and PLATT, District Judge.

PLATT, District Judge.

The defendant-appellant was tried to the court on a two count indictment. The indictment charged:

Count I:

"On or about June 24, 1959, in the Northern District of Indiana, Joe Gillom, James Cromwell Bailey, and Dorothea Scott did knowingly, wilfully, feloniously and unlawfully sell, dispense and distribute a quantity of a narcotic drug, to-wit: 1 gram and 180 milligrams, more or less, of heroin hydrochloride, for the sum of $35.00, to Anthony D. Johnson, which said quantity of heroin hydrochloride was then and there not from the original stamped package, in violation of Section 4704(a) of Title 26 of the United States Code."

Count II:

"On or about June 24, 1959, in the Northern District of Indiana, Joe Gillom, James Cromwell Bailey, and Dorothea Scott did fraudulently, knowingly, wilfully and feloniously receive, conceal, buy, sell and facilitate the transportation, concealment and sale of a quantity of a narcotic drug, to-wit: 1 gram and 180 milligrams, more or less, of heroin hydrochloride, after said quantity of heroin hydrochloride had been imported into the United States and knowing said quantity of heroin hydrochloride to have been imported into the United States contrary to

law, in violation of Section 174, Title 21, United States Code."

Joe Gillom and Dorothea Scott, co-defendants pleaded guilty and testified for the government. After hearing the evidence the court found the defendant guilty on both counts and sentenced him to the custody of the Attorney General for a period of 20 years and imposed a fine of $2,000.00 upon Count I, and twenty-five years upon Count II, the sentences to run concurrently. The government introduced in evidence pursuant to § 7237(a),[1] Title 26 U.S.C.A., the indictment and prior conviction of the defendant wherein the defendant was sentenced to five years for violation of § 2553(a) (now § 4704(a) and § 2554(a) (now § 4705), Title 26 U.S.C.A., and § 174, Title 21 U.S.C.A.

Defendant now contends:

1. That Counts I and II fail to allege an offense against the United States.

2. That the heroin admitted into evidence was not proved to be the same heroin with which he was charged with dealing; and

3. That the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt.

Count I of the indictment is based upon § 4704(a), Title 26 U.S.C.A. which reads as follows:

"Packages

"(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

The defendant contends that the indictment fails to negative the first exception *"in* the original stamped package." (Emphasis supplied.) The defendant failed to present this omission to the trial court. It may be properly

---

[1] "§ 7237. Violation of laws relating to narcotic drugs and marihuana

"(a) Violation of law relating to opium and coca leaves and marihuana. Whoever commits an offense or conspires to commit an offense described in part I or part II of subchapter A of chapter 39 for which no specific penalty is otherwise provided, shall be fined not more than $2,000 and imprisoned not less than 2 or more than 5 years. For a second offense, the offender shall be fined not more than $2,000 and imprisoned not less than 5 or more than 10 years. For a third or subsequent offense, the offender shall be fined not more than $2,000 and imprisoned not less than 10 or more than 20 years. Upon conviction for a second or subsequent offense, the imposition or execution of sentence shall not be suspended and probation shall not be granted. For the purpose of this subsection, an offender shall be considered a second or subsequent offender, as the case may be, if he previously has been convicted of any offense the penalty for which is provided in this subsection or in section 2(c) of the Narcotic Drugs Import and Export Act, as amended (21 U.S.C. § 174), or if he previously has been convicted of any offense the penalty for which was provided in section 9, chapter 1, of the act of December 17, 1914 (38 Stat. 789), as amended; section 1, chapter 202, of the act of May 26, 1922 (42 Stat. 596), as amended; section 12, chapter 553, of the act of August 2, 1937 (50 Stat. 556), as amended; or sections 2557(b) (1) or 2596 of the Internal Revenue Code enacted February 10, 1939 (ch. 2, 53 Stat. 274, 282), as amended. After conviction, but prior to pronouncement of sentence, the court shall be advised by the United States attorney whether the conviction is the offender's first or a subsequent offense. If it is not a first offense, the United States attorney shall file an information setting forth the prior convictions. The offender shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted. If the offender is found by the jury to be the person previously convicted, or if he acknowledges that he is such person, he shall be sentenced as prescribed in this subsection."

raised for the first time in this court. Fed.Rules Crim.Proc. rule 12(b), 18 U.S.C.A.; United States v. Calhoun, 7 Cir., 1958, 257 F.2d 673; Jones v. United States, 10 Cir., 1959, 263 F.2d 959; Davidson v. United States, 10 Cir., 1959, 263 F.2d 959; Burley v. United States, 10 Cir., 1959, 263 F.2d 912; Robinson v. United States, 10 Cir., 1959, 263 F.2d 911. But see United States v. Wora, 2 Cir., 1957, 246 F.2d 283. In determining the validity of this indictment the court must look to the purpose of the statute, which was "to impose taxes for the sale of an elusive subject, to require conformity to a prescribed method of sale and delivery calculated to disclose or make more difficult any escape from the tax." Nigro v. United States, 1928, 276 U.S. 332, 345, 48 S.Ct. 388, 391, 72 L.Ed. 600. In Alston v. United States, 1927, 274 U.S. 289, 47 S.Ct. 634, 71 L.Ed. 1052, the court held that the Revenue Act to collect a tax on narcotics was constitutional and in referring to a section thereof, which was worded the same as the statute in the instant case, the court said at page 294 of 274 U.S., at page 635 of 47 S.Ct.:

"These provisions are clearly within the power of Congress to lay taxes and have no necessary connection with any requirement of the act which may be subject to reasonable disputation. They do not absolutely prohibit buying or selling. * * * "

Applying these principles of law to Count I of the indictment in the instant case to charge unlawful selling of narcotics would not be an offense. The offense described in the statute must be interpreted in the light of the purpose of the statute which was to "lay taxes." The offense consists not only of selling or dispensing narcotics, but in selling or dispensing narcotics not *"in* the original stamped package or *from* the original stamped package." (Emphasis supplied.) To omit not *"in* the original stamped package" omits a necessary element of the offense. (Emphasis supplied.) These words are descriptive of the offense and must be included in the charge. Hale v. United States, 4 Cir., 1937, 89 F.2d 578. The government maintains this allegation is not necessary, relying upon the provisions of § 4724(c), Title 26 U.S.C.A. which states in part:

"* * * Provided further, That it shall not be necessary to negative any of the *aforesaid exemptions* in any complaint, information, indictment, or other writ of proceedings laid or brought under this subpart or sections 4701 to 4707, inclusive." (Emphasis supplied.)

Clearly this refers to the exemptions set forth in § 4724(c),[2] Title 26 U.S.C.A. The exceptions in § 4704, Title 26 are

---

2. § 4724, Title 26 U.S.C.A.

"(c) Possession.—It shall be unlawful for any person who has not registered and paid the special tax provided for by this subpart or section 4702(a) to have in his possession or under his control narcotic drugs; and such possession or control shall be presumptive evidence of a violation of this subsection and subsection (a), and also a violation of the provisions of sections 4721 and 4722: Provided, That this subsection shall not apply to any employee of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this subpart or section 4702(a), having such possession or control by virtue of his employment or occupation and not on his own account; or to the possession of narcotic drugs which has or have been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this subpart or section 4702(a); or to any United States, State, county, municipal, District, Territorial, or insular officer or official who has possession of any of said drugs, by reason of his official duties; or to a warehouseman holding possession for a person registered and who has paid the taxes under this subpart and sections 4701 to 4707, inclusive; or to common carriers engaged in transporting such drugs: Provided further, That it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this subpart or sections 4701 to 4707, inclusive; and the burden of proof of any such exemption shall be upon the defendant."

set forth in § 4704(b)(1)(2).[3] These exceptions need not be negatived in the indictment since they do not describe the offense. United States v. Winnicki, 7 Cir., 1945, 151 F.2d 56, 57, relied upon by the government, is clearly distinguishable. There the defendant was charged with unlawfully receiving the transfer of automobile tires and the unlawful possession thereof without surrendering or without having certificates "issued by the local War Price and Rationing Board * * * in accordance with the provisions of * * * Ration Order 1A as amended." At page 58 the court said:

> "Ration Order 1A makes all transfers of tires illegal 'unless' permitted by an order of the War Production Board. Since the word 'unless' means except (as dictionaries define it), all transfers are illegal except authorized ones. Hence it is an exception, a matter of defense, a matter of proof of a negative factor, which takes the accused without the charge. As such, it is not an element of the crime."

Count I in the instant indictment would not state an offense if it alleged the selling of the narcotic drug without setting forth not in and from the original stamped package. This exception described an element of the crime as we have already explained. However, the charge need not negative the exceptions set forth in § 4704(b)(1)(2), Title 26 U.S.C.A. which are matters of defense,

as in the Winnicki case it was necessary to deny the order permitting the transfer by the War Production Board, which is a defense.

■ Count II of the indictment charges a violation of § 174, Title 21 U.S.C.A. which reads in part as follows:

> "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000."

This part of the statute contains two offenses,

1. "to import or bring any narcotic drug into the United States contrary to law;

2. "or * * * sells any narcotic drug after being imported or

---

3. § 4704, Title 26 U.S.C.A.

"(b) Exceptions in case of registered practitioners.—The provisions of subsection (a) shall not apply—

"(1) Prescriptions.—To any person having in his or her possession any narcotic drugs or compounds of narcotic drug which have been obtained from a registered dealer in pursuance of a written or oral prescription referred to in section 4705(c) (2), issued for legitimate medical uses by a physician, dentist, veterinary surgeon, or other practitioner registered under section 4722; and where the bottle or other container in which such narcotic drug or compound of a narcotic drug may be put up by the dealer upon said prescription bears the name and reg-

istry number of the druggist, and name and address of the patient, serial number of prescription, and name, address, and registry number of the person issuing said prescription; or

"(2) Dispensations direct to patients.—To the dispensing, or administration, or giving away of narcotic drugs to a patient by a registered physician, dentist, veterinary surgeon, or other practitioner in the course of his professional practice, and where said drugs are dispensed or administered to the patient for legitimate medical purposes, and the record kept as required by this subpart of the drugs so dispensed, administered, distributed, or given away."

brought in, knowing the same to have been imported or brought into the United States contrary to law."

Count II reads exactly on the statute and charges the second offense. No element is omitted. A similar indictment was held sufficient in the following cases: Brown v. United States, 9 Cir., 1955, 222 F.2d 293; United States v. Rodgers, 5 Cir., 1955, 218 F.2d 536; and Rodriguez v. United States, 5 Cir., 1955, 218 F.2d 810.

■ Defendant further contends that the heroin admitted in evidence was not properly identified as the heroin which was obtained from one of the co-defendants, Joe Gillom. The narcotic agent Johnson testified that he received the package from Joe Gillom on June 24, 1959, who had been designated by the defendant to deliver the heroin to Johnson; that he paid Gillom $35.00 for the heroin and received a tin-foil package which contained powder from Gillom. Johnson joined the other agents, delivered the package to Agent Leek, and a field test of the contents of the package was performed which indicated the powder contained an opiate. The package containing the powder was placed in an envelope which was identified as Government's Exhibit 1–C which was initialed by Leek and Johnson. All of the agents drove back to Chicago, Illinois, from Gary, Indiana, and Agent Leek took custody of Government's Exhibit 1–C, inserted it in a locked-sealed envelope, and then placed it in a locked steel cabinet in the office of the Bureau of Narcotics. Other agents had access to the locked steel cabinet but on June 25, 1959, when Leek, in the presence of Johnson removed this envelope it was still sealed. He opened it, weighed the contents of the tin-foil package, and placed the contents in a glassine bag. (Government's Exhibit 1–D.) The glassine bag, tin-foil (Government's Exhibit 1–D), and the substitute envelope (Government's Exhibit 1–C) were placed in a lock-sealed envelope. On this envelope (Government's Exhibit 1–A) Leek wrote "Weighed and sealed by Everett P. Leek 6/25/59" and signed his name. This was witnessed by Anthony D. Johnson, who also signed his name on this envelope. Johnson testified at the trial that he and Leek then delivered this sealed envelope to the United States Chemist. It was stipulated that Government's Exhibits 1–A, 1–C, 1–D, and 1–E were delivered to the United States Chemist; that the substance in the glassine bag was examined by the Chemist; that the contents according to the standard tests contained heroin; and that all of these exhibits had been in the custody of the Chemist from the time they were delivered to him until they were brought into the courtroom by him the morning of the trial. We, therefore, have the heroin received from Gillom by Johnson traced into the courtroom. When the evidence is carefully analyzed there was sufficient identification to dispel any inference of the substitution or change in the contents of the tin-foil package, (Government's Exhibit 1–E) which was placed in the glassine bag. (Government's Exhibit 1–D.) Even if the exhibits, including the heroin, had not been introduced in evidence the testimony of the witnesses and the stipulation as to the chemical analysis were sufficient to justify the district court in finding the defendant guilty. Ware v. United States, 8 Cir., 1958, 259 F.2d 442; cf. United States v. Adelman, 2 Cir., 1939, 107 F.2d 497.

This brings forward the defendant's final contention that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Johnson was in Gary, Indiana, about 6:00 p. m. on June 24, 1959. He recognized Bailey in the automobile and waved to him. Bailey stopped the car and Johnson told him he "wanted to get some more of that stuff." Bailey arranged for Johnson to meet Joe, (Joe Gillom, co-defendant) at the "Broadway Lounge." At approximately the appointed time, Johnson went to the "Broadway Lounge" and met Joe. Bailey appeared in the Lounge, Gillom followed him out, and then returned. Johnson and Gillom left the Lounge together and walked to the "Blue Moon Tavern" and waited for a few minutes. Dorothea

Scott, the other co-defendant, approached Gillom and handed Gillom a tin-foil package. Johnson was within three or four feet of Gillom and Scott when the exchange took place. Johnson observed the delivery of the package. In turn Gillom handed the package to Johnson. This package contained the opiate which was introduced in evidence. It is a reasonable inference that the heroin was obtained from Gillom at the direction of Bailey. Johnson paid Gillom $35.00. Agent Leek saw Johnson and Gillom together.

Joe Gillom, a co-defendant, testifying for the government said that he gave the $35.00 he received from Johnson to defendant Bailey for the narcotics; that Dorothea Scott came by and gave him the package; and that Bailey told him to meet Johnson at the "Broadway Lounge."

Dorothea Scott, also a co-defendant, testifying for the government, said that she had known Bailey for about two years; that she saw him on the 24th day of June, 1959; that he picked her up in his car and gave her the package to take to Joe Gillom, which she did.

Bailey testified and denied that he had possession or any connection with the narcotic drug, and denied that he received the $35.00 from Gillom. Lulu Bailey, wife of defendant, testified that she was with her husband the evening of June 24, 1959 from 7 p. m.; that she knew Dorothea Scott and Joe Gillom who is her cousin; and that she did not see Dorothea Scott or Joe Gillom on that evening.

The evidence justified the court in finding that Bailey knowingly had possession [4] of the narcotic drug, and that he was guilty as charged in the second count of the indictment beyond a reasonable doubt. United States v. Johnson, 7 Cir., 1958, 260 F.2d 508, certiorari de-

nied 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573. The testimony was conflicting. However, the evidence must be taken in the light most favorable to the government, and the credibility of the witnesses was for the trial court. United States v. Detente, 7 Cir., 1952, 199 F.2d 286.

Inasmuch as the defendant was sentenced on Count I and Count II, the sentences to run concurrently, and the evidence was sufficient to sustain the conviction on Count II, the judgment of conviction must stand. United States v. Detente, supra.

For the foregoing reasons the judgment on Count I is reversed and the judgment on Count II is affirmed.

4. Part of § 174, 21 U.S.C.A. reads as follows:
"Whenever on trial for violation of this section the defendant is shown to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."